N. L. TOMLINSON & Co. *v.* JOHN T. QUIGLEY.

As well in actions for the non-payment of the price of goods sold and delivered under a contract as in actions for goods sold and delivered with warranty or in actions for work and labor done under a contract, the defendant may at his election either avail himself of any breach of the contract by the plaintiff causing damage to him in reduction of the damage claimed and sustained by the plaintiff from any breach of it by him, or he may sue the plaintiff for the same independently, and the former suit and recovery against him will be no bar to the latter unless in the former suit he had availed himself of his right and privilege to prove and claim such damage in reduction of the damage demanded in it by the plaintiff from him.

ASSUMPSIT on a written agreement dated April 6th, 1864, in which the defendant agreed to furnish the plaintiffs the flitch timber, plank, keel, bedlogs, etc., etc., that they may require to build a schooner, all first-class Delaware white oak, delivered on the railroad at Twelfth Street as ordered—plank forty dollars per thousand, keel fifty dollars per thousand, bedlogs sixty dollars per thousand, flitch timber thirty-three dollars per thousand; cash along as the timber comes in, part pay, all payments to be made before the schooner leaves Wilmington. The materials were furnished, accepted, and paid for, and they were used in the building of the schooner, but the plaintiffs alleged that they afterward discovered, and only a short time before she was finished, that the materials were not of the best quality of Delaware white oak, but were of a very inferior quality, worth at least one-fourth less in value, on which they then refused for that reason to pay him the balance of his account for it, amounting to about three hundred dollars, for which he had, however, afterward sued them and recovered judgment in this court, and

that the same had since been collected by execution on the judgment and paid to him by the sheriff; and this action was now brought by them against him to recover damages for the breach of the agreement by him and the loss and injury which they had sustained by his failure to furnish materials of the quality stipulated by him in the contract. The pleadings in the case were special and numerous, and had ended in a demurrer by the defendant to a replication of the plaintiffs to one of the pleas entered by him; but as there was no dispute about the facts of the case and they all appeared in the pleadings and on the record, the counsel consented ·that it might be considered and treated substantially as a case stated. The case was heard before Comegys, C. J., and Houston, J. Absent, Wootten, J.

*Higgins,* for the plaintiffs : The·declaration alleges the breach of a written contract by the defendant to furnish first-class Delaware white oak to the plaintiffs at certain stipulated prices, for building a schooner, in that the lumber furnished by him was not first-class Delaware white oak, but was of a very inferior quality and of much less value than the contract price agreed to be paid for it and which was paid for it. To this the special plea of the defendant is that he furnished the lumber according to the contract, that the· plaintiffs accepted it without objection, paid for it in part, and that the defendant for the balance brought a suit under the mechanics' lien law against the plaintiffs in this court and obtained judgment in it for three hundred and six dollars and thirteen cents, and that the plaintiffs afterward paid the same to the sheriff on a *fi. fa.* issued upon it. In their replication to this plea the plaintiffs allege that they did object to the inferiority of the lumber and complained to the defendant of it, but that they did not plead that matter as a defense in the suit against them under the mechanics' lien law in this court or offer any evidence in it to show the damage caused them by the bad and inferior quality of the lumber. And to this replication the defendant has demurred generally and specially.

Where the goods delivered to the buyer are inferior in quality to the warranty, or the vendor's agreement as to quality, the buyer has the choice of three remedies. First, he may refuse to

11

accept them and return them; secondly, he may accept them and bring an action against the vendor for the breach of the warranty; thirdly, if he has accepted them but not paid for them, he may prove the breach of warranty in reduction of the damages in an action brought against him by the vendor for the price of them. *Benj. on Sales*, sec. 894; 2 *Smith's Ld. Ca.* 35; *Poulton* v. *Lattimore*, 9 *B. & C.* 259. But notwithstanding the plaintiffs might have availed themselves in the defendant's suit against them in this court for the balance of the contract price of the lumber, of the breach of the contract by him by reason of the inferior quality of it, in reduction of his demand for damages or for the contract price of the balance of the lumber then unpaid for, they were not bound to do so but can now maintain this action against him for that breach of the contract on his part. This was distinctly ruled in the late cases of *Davis* v. *Hedges, Law Rep.* 6 *Q. B.* 687; *Bascom* v. *Manning*, 52 *N. H.* 132; *Benj. on Sales*, sec. 899; 2 *Smith's Ld. Ca.* 35. And in such a case the buyer can maintain the action against the vendor without returning or offering to return the goods and without notice to the vendor. *Benj. on Sales*, sec. 889; *Poulton* v. *Lattimore*, 9 *B. & C.* 259. But the loss and damage sustained by the plaintiffs by reason of the breach of the contract by the defendant must not exceed the amount demanded by him in his action against them in this court and therefore they can only recover the full amount of the damages to which they are justly entitled in a separate action against him. *Mundel* v. *Steel*, 8 *M. & W.* 858; *Rigge* v. *Burbidge*, 15 *M. & W.* 598.

*Hoffecker* (*Harrington* with him), for the defendant: Where an action is brought for goods furnished at a stipulated price and the purchaser does not, either in bar of the action or in reduction of the damages demanded, object to the quality of them but allows the vendor to recover in it a verdict for the full price agreed on, he cannot afterward maintain an action against the vendor to recover damages upon the ground that the goods were of an inferior quality and unfit for the purpose for which they were ordered. *Fisher* v. *Samuda et al.,* 1 *Camp.* 194. That case establishes the principle that such a purchaser by suffering

judgment to go against him for the whole price has neglected his opportunity of obtaining a decision on the inferiority of them if there was any, and is estopped from afterward bringing an action on that score. 2 *Smith's Ld. Ca.* 39. Where judgment is suffered for the entire contract price it seems to be an exception to the ruling in the cases of *Sheet* v. *Blay* and *Poulson* v. *Lattimore*, in which it is said that the purchaser has an option to give the breach of the vendor in evidence in reduction of the damages in his action for the price of the goods or to sue him on the warranty. 2 *Smith's Ld. Ca.* 39. Supposing there was a partial failure in the quality and value of the lumber delivered and accepted, was not the vendor entitled to recover the price of it in the action brought by him, subject to a fair and proper deduction for the damage which the purchaser had sustained by the non-performance of the contract strictly and completely by the vendor by way of recouping damage, as it is termed, on the authority of the case of *Draper* v. *Randolph & Co.*, 4 *Harr.* 456, in this court ?

In this case the timber was accepted and used by the purchasers, the plaintiffs, and the right of the vendor, the defendant, to recover the stipulated price for it depended upon a condition precedent, viz. : that the timber should be of first-class quality ; and in an action by the vendor against them for the stipulated contract price of it, the purchasers, the plaintiffs in the present action and the defendants in the previous suit in this court on the contract, by suffering judgment to go against them for that price confessed that the condition of the contract had been complied with, and were therefore now estopped in this court from pretending or alleging that the lumber was not of the required quality. This is what constitutes an actual acquiescence in the performance of the contract referred to by Mr. Starkie in treating on this subject. 2 *Stark. Ev.* 879. Besides, the plaintiffs might have easily ascertained if there was any defect in the quality of the lumber or any part of it before using it, and could have refused to accept it without any serious inconvenience or prejudice to themselves. The neglect to do so or return the goods or even to make any objection to the quality of them until after the suit was brought to recover the small

balance of some three hundred dollars due for the stipulated price of them, affords a strong presumption that the quality of the lumber corresponded with the quality specified in the contract. This case is precisely that of *Fisher* v. *Samuda*, several times before cited. The American cases are numerous in which it has been held by the courts that a defendant against whom a judgment has been rendered on an express or implied contract cannot sue for the breach or omission of any duty or obligation imposed by it which constituted a condition precedent to the plaintiff's right of action upon it.

*Comegys, C. J.*, delivered the opinion of the court : In this case we are called upon to decide a question presented for the first time for adjudication in this State. It is whether an action will lie for an alleged breach of a contract by the defendant respecting the quality of goods furnished by him after their acceptance by the plaintiffs and his payment for them of the price fixed by the contract. Or, in other words, can the action brought in this case by the plaintiffs against the defendant be maintained in this court under all the facts and circumstances alleged and admitted in the pleadings?

It is an action of *assumpsit* upon a written promise and agreement between the parties that the defendant would furnish the plaintiffs the flitch timber, plank, keel, bedlogs, etc., etc., that they might require to build a schooner, all first-class Delaware white oak, delivered on the railroad at Twelfth Street as ordered, plank forty dollars per thousand, keel fifty dollars per thousand, bedlogs sixty dollars per thousand, flitch timber thirty-three dollars per thousand, cash along as timber comes in, part pay, all payments to be made before the schooner leaves Wilmington, signed John T. Quigley. It is admitted that the same was furnished to them by him in the required quantity but not in the stipulated and required quality of first-class Delaware white oak, and a large part of the contract price was voluntarily paid by them to him for it, and the residue of it was also afterward paid by them to the sheriff on execution process issued upon a judgment obtained in this court by him against them for the balance of it under the mechanics' lien law. No

objection to the timber on the ground of quality or otherwise was made on the delivery of it from time to time, nor was any defense offered by the plaintiffs to this suit in the action against them by the defendant in this court for the balance of the contract price under the mechanics' lien law on the ground of such defect by way of reducing the damages demanded by him in that action; and it is upon these facts and circumstances the question above stated is submitted for our decision.

It is undoubtedly true that down to the time of the decision in the case of *Basten* v. *Butter,* 7 *East.* 479, the law was that in an action to recover the contract price of an article sold with a warranty or made by the plaintiff for the defendant, and which was not wholly unfit for the purpose for which it was wanted, or for the performance of services rendered by the plaintiff to the defendant, the defendant could make no defense, in the first case that the article purchased did not correspond to the terms of the warranty, nor in the second case that the article made was unfit for the purpose for which it was designed, nor in the last case that the services were not such as were stipulated for, but he was driven to his cross-action in all such cases to recover in his turn damages for the non-fulfillment of the contract by the adverse party. But that case introduced a different ruling, that the defendant might in such cases show in defense that the work done or articles delivered were not in accordance with the contract and obtain a deduction from the price on that account, or even a verdict against the plaintiff if they were of no value. This was taking a long stride at that time in advance of former judicial decisions in such cases, but there has been no recession from that advance since. The wisdom and policy of it have been uniformly recognized by the English courts in all their decisions in subsequent cases falling within the principle and precedent established by it. The reason for it was that under the former rules in such cases cross-actions were necessary between the parties on the same contract and growing out of the same business transaction between them, and the object of it was to prevent circuity of action and to avoid the waste of time and expense in unnecessary litigation. In practice it was adopted and molded somewhat in analogy to the plea of

set-off established by statute in an action for a money demand, but which can never apply where the mutual demand on either side is for unliquidated damages, for while in the classes of cases mentioned the defendant is now allowed to show a breach of the same contract by the plaintiff to his detriment and injury in reduction of the damage demanded by the plaintiff for his breach of it, in analogy to the statute and plea of set-off, the defendant is not bound in such a case to avail himself of this right and privilege, but as in a case of a plea of set-off under the statute he still has his election to waive it and to sue the plaintiff in a separate action on the contract for the damages he has sustained by his breach of it. And as in case of mutual debts or money demands between the parties to a suit, the defendant may or may not at his option avail himself of his as a defense *pro tanto* against that of the plaintiff by pleading it as a set-off under the statute, and is in no wise prejudiced or concluded or estopped if he omits to do so from afterward suing the plaintiff upon it and recovering the amount of it from him, so in actions to recover the contract price of goods sold with warranty or of services rendered, it was decided that a defendant who had sustained damage by a breach of the same contract on the part of the plaintiff had a similar option and might or might not avail himself of it as a defense in the action of the plaintiff against him and in reduction of the damages claimed by him for the breach of the contract by the defendant, but if he omitted to avail himself of it in that manner he was not to be precluded afterward from bringing his action upon it against the plaintiff. Such is unquestionably the settled law now in England on this point, and also in this country, we believe, so far as we have been able to ascertain it. *Street & Blay,* 2 *Barn. & Adol.* 456 ; *Poulton* v. *Lattimore,* 9 *Barn. & Cres.* 259 ; *Moundel & Steel,* 8 *M. & W.* 858 ; *Rigge* v. *Burbidge,* 15 *M. & W.* 598 ; *Davis* v. *Hedges, Law Rep.* 6 *Q. B.* 687 ; *Bascom* v. *Manning,* 52 *N. H.* 132 ; *Basten* v. *Butter,* 7 *East.* 479 ; *Benj. on Sales,* sec. 899.

But a distinction has been sought to be drawn between cases of warranty or for work and labor and the present case, which is a suit for an alleged breach of contract to furnish timber of

a certain quality, but we think none exists in principle between this and a suit to recover damages for a breach of contract for work and labor on account of the insufficient or inferior character of the work done.    The case of warranty, inasmuch as it technically applies only to a thing *in esse* and ascertained, stands upon the ground that the warrantee having by the nature of the contract the property in the thing sold and delivered to him which he cannot reinvest in the vendor without his consent, is driven to his action to recover damages for the breach of it, and therefore to avoid circuity of action in such a case he shall be allowed in the action by the vendor and warrantor against him for the price of it to show the breach of the contract and warranty by him in reduction of the damages demanded by him, or even to defeat his recovery entirely.    And yet cases of breach of contract for work and labor have been put precisely upon the same ground, and for the obvious reason that the party sued would otherwise have been deprived of the benefit of such a performance of the contract as he might have been willing under the circumstances to put up with rather than not have the work done at the time.    This appears by the case of *Davis* v. *Hughes,* decided as late as the summer of 1871 by the Court of Queen's Bench in England as reported in 6 *Law Rep.,* for it is there stated by Hanon, Judge, who delivered the opinion of the court, that the law is the same in the case of a contract for the delivery of chattels of a particular quality.

This is not a case of warranty, for a warranty in its strictly legal and technical sense, as we have before remarked, can only be made of things ascertained and existing, so as to be seen and inspected at the time of the contract, such as a ship, a horse, a machine, or other existing chattel, may be warranted to possess certain qualities, and if it is falsely done damages may be recovered for the breach of it ; but an agreement to perform work and labor in a particular manner or to furnish articles or materials of a particular quality is not a warranty technically speaking; it is none the less, however, the subject of an action at law for a breach of it than a warranty is, and the form of the action is the same in either case—covenant if it be under seal, or *assumpsit* if it is not.    Now, is there any reason

why a party sued for the price of work and labor performed for him and which he accepted, or for the price of materials to be sold and delivered to him of a particular quality and which were received and accepted by him, although they may not have been of the stipulated quality, should not have a right to sue for the breach of such a contract by the other party to it, as well as the warrantor who has accepted and retained the article warranted has a right in such a case to sue the warrantor for a breach of the warranty? It would seem not, except the very technical one founded on the distinction that in the latter case the property in the article vested in the warrantee on its acceptance by him, and he cannot rescind the contract so as to reinvest the property in it again in the warrantor without his consent. Should such a reason and such a distinction be allowed to seriously interfere with what now seems to be the settled policy of the law alike in all these cases, to allow the counter claim of the defendant for damages for a breach of the same contract by the plaintiff, to be given in evidence in the action in reduction of the damages claimed by him in it, and if sufficient even to counterbalance them?

But it is insisted by the counsel for the defendant that this case stands upon a different footing from that of a case for a breach of warranty or that of a case on a contract for the price of work and labor, inasmuch as the furnishing in this case of first-class Delaware white oak was a condition precedent to any right of action on the part of the vendor, the defendant, to recover the contract price of the timber, and that by accepting and using and voluntarily paying much the larger part of the contract price for it without any objection to the quality of it, and afterward suffering judgment to go against him in this court for the balance of the contract price of it without any defense whatever, the plaintiffs confessed that this condition precedent of the contract had been performed and complied with by the defendant, and that they were thereby estopped in this court from pretending or alleging that it was not of the stipulated quality, and that it constituted on their part what is denominated acquiescence in the performance of the condition of the contract by the defendant, for which they refer to 2

*Stark. Ev.* 879.   But this will not be the first time that the sound-
ness of that position and the inference of Mr. Starkie in rela-
tion to it has been questioned, for from the remarks of Justice
Hanon in the case before referred to by us it appears that such
a plea or defense does not now avail in such a case as this in
England, and should not, we think, be allowed here, but that
the rule on this point which prevails in cases of warranty and
in cases of contracts for work and labor ought also to apply to
a case like this, of a contract to furnish lumber or materials of
a specific kind or quality at a stipulated price, and that the lat-
ter should stand on the same footing as the former, and we
decide accordingly.   The law, then, is to be taken to be that as
well in actions for the non-payment of the price of goods sold
and delivered under a contract as in actions for goods sold and
delivered with warranty, or in actions for the price of work
and labor done under a contract, the defendant may at his elec-
tion either avail himself of any breach of the contract by the
plaintiff causing damage to him in reduction of the damage
claimed and sustained by the plaintiff from any breach of it by
him, or he may sue the plaintiff for the same independently, and
the former suit and recovery against him shall be no bar to the
latter unless in the former suit he had availed himself of his
right and privilege to prove and claim the amount of such dam-
age in reduction of the amount of damages demanded by the
plaintiff in it from him.